ANAG
**BOURKE & NOLD**
Joseph T. Nold, Esq.
Nevada Bar No. 008210
521 South Sixth Street
Las Vegas, NV 89101
(702) 262-1651
Attorney for Defendant

FILED

AUG 23   4 29 PM '06

*[signature]*
CLERK

### DISTRICT COURT
### FAMILY DIVISION
### CLARK COUNTY, NEVADA

* * * * *

| | |
|---|---|
| ASH SUDHAKAR, | Case No.: D308165 |
| Plaintiff, | Dept. No.: I |
| -v- | |
| DIXIE SUDHAKAR, | |
| Defendant. | |

### MARITAL SETTLEMENT AGREEMENT

COMES NOW, the Defendant, DIXIE SUDHAKAR, by and through her attorney of record, Joseph T. Nold, Esq., of BOURKE & NOLD, and hereby submits the attached Marital Settlement Agreement. This Marital Settlement Agreement, signed by all parties, is filed concurrently with the Decree of Divorce, and incorporated by reference into said Decree.

DATED this 23 day of August, 2006.

_____
JOSEPH T. NOLD, ESQ.

Page 1 of 1

## MARITAL SETTLEMENT AGREEMENT

THIS MARITAL SETTLEMENT AGREEMENT ("Agreement"), made and entered into as of the 14th day of July, 2006, by and between Ashok Sudhakar, hereinafter referred to as "Husband," and Dixie Lynn Sudhakar, hereinafter referred to as "Wife."

### WITNESSETH

A.  The Parties hereto are Husband and Wife, having been married on March 10, 1973 in Lake Tahoe, California.

B.  There are no minor children who are the issue of this marriage.

C.  The Parties separated in 2002 and on or about August 12, 2002, the Court of Common Pleas, Berks County, Pennsylvania issued a Support Order in Case Number 674104435 whereby Husband was to pay Wife $3,800.00 per month for support while the parties were separated. Pursuant to that Support Order, Husband is, and has been, currently paying $3,800.00 per month to Wife.

D.  On or about October 16, 2003, Husband filed a petition for divorce in the Eighth Judicial District Court, Clark County, Nevada, Case No. D308165. The Parties thereafter agreed to resolve the case in Nevada despite the Pennsylvania proceedings. Trial in this matter commenced on July 13, 2006 in Department I and continued for two (2) days of testimony.

E.  Irreconcilable differences for some time past have existed between the Parties as a result of which the Parties have decided to mutually enter into this Agreement.

F.  The Parties desire and intend by this Agreement to settle fully, promptly and for all time their respective property rights and interests, spousal support, and the rights, duties, and obligations of each to the other, and to discharge each party's legal obligations arising out of and in connection with the relationship between the Parties.

Page 1 of 16

_A_  _DS_

G. The Parties believe this Agreement sets forth a fair and equitable distribution of all separate and community property.

NOW THEREFORE, in consideration of the foregoing facts and of the mutual agreements and covenants contained in this Agreement, it is covenanted, agreed and promised by each party hereto as follows:

## I.
## INCORPORATION OF RECITALS

Husband and Wife hereby incorporate the recitals above by reference herein and expressly make them a part of this Agreement.

## II.
## TERMS OF AGREEMENT

The Parties hereby agree to the following terms and agree to perform any and all acts necessary, including signing necessary documents, to implement the following terms:

A. **Settlement**. Husband and Wife agree that Husband will pay $4,250,000.00 to Wife as follows:

1. $100,000.00 payable on or before September 1, 2006;

2. $150,000.00, payable on or before December 31, 2006;

3. $2,000,000.00, payable over the course of seven (7) years as follows: i) monthly installments of $10,000.00, payable on or before the fifteenth day of the month for which payment is being made, beginning on October 15, 2006 and ending September 15, 2013; and ii) $165,000.00, payable annually on or before September 30th, beginning in 2007 and ending in 2012, and $170,000.00 payable on or before September 30, 2013.

4. $2,000,000.00, payable on or before December 31, 2013.

Page 2 of 16

B. **No Interest**. The Parties agree that there will be no interest assessed on any amounts due under this Agreement. Notwithstanding the foregoing, in the event Husband is in default under the terms of this Section II of this Agreement, and if the default is not cured, Husband and Wife agree that interest shall be assessed on the amount then due at the rate of twelve percent (12%) annum, until the default is cured.

C. **No Prepayment Penalty**. The Parties agree that the payments referenced in this Section II may be prepaid, in whole or in part, at any time without penalty.

D. **Default**. The Parties agree that if Husband is in default of the terms of Section II(A) of the Agreement, Wife shall provide husband with written notice of such default. If Husband fails to cure the default within thirty (30) days of the date the notice is served, or within 10 days of the date of the date the notice is served if Husband is in default on a $10,000.00 payment, interest shall accrue from the date of default at twelve percent (12%) annum until the default is cured, and Wife shall be entitled to begin collection proceedings. The Parties further Agree that amounts due hereunder will not accelerate in the event of a default.

## III.

## SUPPORT OR MAINTENANCE

Husband and Wife agree that the payments set forth in Section II of this Agreement are sufficient such that no spousal support or maintenance will be provided to either party. This provision shall not be subject to modification.

## IV.

## COMMUNITY AND SEPARATE PROPERTY OF THE PARTIES

Husband and Wife represent and agree that the property, real and personal, described below is all of the community and separate property of the Parties and is the undisputed community and separate property owned by the Parties on the date of this Agreement:

1. Community's real property located in Lake Tahoe, ~~Nevada~~ *California* (Lot 94 of Montgomery Estates Unit 5).

2. Wife's real property located in South Lake Tahoe, California (Lot 3, Tract 125 of Bijou Park Acres).

3. Husband's real property located at 1450 Fitzgerald Avenue, Rialto, California.

4. Wife's real property (duplex) located in El Cerrito, California.

5. Wife's real property (land) located in El Cerrito, California.

6. 100% stock ownership in Husband's businesses, Sudhakar Company, Inc., Sudhakar Company International, and Sudhakar Management Services, LLC.

7. Dormant, closed, or valueless businesses, including Z Group International, AMX Company, Inc., and Penn Woods Corporation, a California corporation.

8. Husband's Personal Retirement Account.

9. Wife's Personal Retirement Account.

10. Community's Penn Woods Financial investment accounts.

11. Husband's personal bank accounts.

12. Wife's personal bank accounts.

13. Community's marital home furnishings.

Page 4 of 16

14. Community's Wells Fargo Marital Trust Account.

15. Community's Wachovia Marital Trust Account.

16. Wife's 2001 BMW 530 ia.

17. Husband's 2001 Mercedes SL 500.

18. Community's Jewelry.

19. Husband's 2 Gold Coins.

V.

**DISTRIBUTION OF COMMUNITY AND SEPARATE PROPERTY**

The community and separate property of the Parties shall be divided as follows:

A. **To Wife, with any corresponding debt thereon:**

1. 50% of the net proceeds from the sale of the real property located in Lake Tahoe, ~~Nevada~~ California (Lot 94 of Montgomery Estates Unit 5).

2. 100% interest in the real property located in South Lake Tahoe, California (Lot 3, Tract 125 of Bijou Park Acres).

3. Wife's real property (duplex) located in El Cerrito, California.

4. Wife's real property (land) located in El Cerrito, California.

5. Wife's Personal Retirement Account.

6. 50% interest in Penn Woods Financial investment accounts.

7. 2001 BMW 530 ia, including all debts thereto.

8. All jewelry currently in Wife's possession.

9. All personal property and furniture currently in Wife's possession, except as set forth herein.

**B.    To Husband, with any corresponding debt thereon:**

1. 50% of the net proceeds from the sale of the real property located in Lake Tahoe, ~~Nevada~~ *California* (Lot 94 of Montgomery Estates Unit 5).

2. 100% interest in the real property commonly known as 1450 Fitzgerald Ave, Rialto, California. Husband agrees to hold Wife harmless from any and all outstanding debts and obligations on the property.

3. 100% ownership in Husband's businesses, Sudhakar Company, Inc., Sudhakar Company International, and Sudhakar Management Services, LLC, including all assets and debts of those businesses. Husband shall also receive existing dormant and valueless businesses, Z Group International, AMX Company, Inc., and Penn Woods Corporation, a California corporation, to revive and use as to future business operations. To the extent that there is value in any of those businesses as of the date of this Agreement, Husband shall pay such value to Wife at the time Wife shows such value to have existed. Husband agrees to hold Wife harmless from any and all outstanding debts and obligations of these businesses, including any IRS debts and obligations.

4. Husband's personal Retirement Account.

5. Husband's personal bank accounts.

6. 50% interest in Community's Penn Woods Financial investment accounts.

7. All marital home furnishings currently in Husband's possession.

8. 2001 Mercedes SL 500, including all debts thereto.

9. 2 Gold Coins, should the coins ever be located.

10. All other items currently in Husband's possession, except as set forth herein.

**C.    Other Businesses.**

The Parties acknowledge that at the July 13, 2006 trial of this matter, Wife raised concerns regarding the value and/or ownership of other businesses allegedly formerly owned and/or operated by Husband, as set forth on Exhibit 1 hereto. To the extent that there is any community or separate

Page 6 of 16

interest in or value to those businesses, Wife shall be entitled to such interest or value, but shall also be responsible for any debt or liabilities existing or incurred as to such businesses she assumes or utilizes.

### D.     Marital Trust Accounts.

The Parties agree that the Wachovia and Wells Fargo Marital Trust accounts shall be closed, with the proceeds divided equally between the Parties' children, Melissa and Elizabeth Sudhakar.

## VI.

## DISTRIBUTION OF DEBTS

Husband and Wife agree that the following are the community and separate debts of the Parties, to be distributed as follows:

**A.     To Wife.** Wife will assume responsibility for, and hold harmless and indemnify Husband from, the following debts:

1. All debts, if any, incurred by Wife personally from April 2002 forward.

2. All debts, if any, on Wife's 2001 BMW 530 ia.

3. All debts, if any, related to any assets awarded to Wife hereunder.

4. Taxes on Wife's personal income since the Parties have been filing separately, if any.

**B.     To Husband:**

Husband will assume responsibility for, and hold harmless and indemnify Wife from, the entirety of the following debts:

1. Loan from Peter (deceased) and Sarla Jayn in the approximate amount of $485,000.00;

2. Charge amounts owed to Wachovia Bank in the approximate amount of $29,000.00.

Page 7 of 16

_P_   _DS_

3. Loan from Michael Chew/Truspeed in the approximate amount of $19,000.00;

4. Loan from Brad Foust and Steve Macher in the approximate amount $17,000.00;

5. Taxes on Husband's personal income since the Parties have been filing separately, if any.

6. Taxes on all businesses awarded to Husband herein, including current claims of approximately $430,000.00.

7. All other debt, if any, related to assets awarded to Husband.

8. All debts incurred by Husband personally since April 2002.

## VII.

### HUSBAND'S BUSINESSES

Husband will retain 100% ownership of his businesses, including Sudhakar Company, Inc., Sudhakar Management Services, LLC, and Sudhakar International, Inc. Wife will have no ownership interest in these businesses. Husband will indemnify and hold Wife harmless from any and all outstanding debts and obligations of the businesses identified herein, including any IRS debts and obligations.

## VIII.

### SALE OF THE COMMUNITY'S LAKE TAHOE REAL PROPERTY

Husband and Wife agree that they will list the Community's real property located in Lake Tahoe, ~~Nevada~~ California (Lot 94 of Montgomery Estates Unit 5) (hereinafter, the "Property") for sale upon the real estate market, with a mutually acceptable listing agent, on or before August 31, 2006. The Parties further agree that the asking price for the Property will be determined jointly by the Parties after consultation with, and recommendations from, their mutually agreed upon listing agent. Notwithstanding any other provision of this section of the Agreement to the contrary, the Property may be sold at any price mutually agreeable to the Parties.

Page 8 of 16

The "net sales proceeds" realized from the sale of the Property shall be divided equally between the Parties. The "net sales proceeds" is the total sum remaining after the payment of all real estate commissions, sales charges and costs, escrow fees, title fees, title insurance costs, and other such expenses relating to the sale of the property, as well as payment of any taxes or debt due on the property.

The Parties further agree that if they receive a bona fide offer from a third party for the purchase of the property for a selling price that is at least 95% of the listing price, such offer shall be accepted and the property sold, unless the Parties mutually agree not to accept the offer. If only one of the Parties desires the Property to be sold at such offer price that is at least 95% of the listing price, the Parties agree that the rejecting Party shall have 30 days to match the offer, after which the offer shall be accepted and the Property sold if the other Party so desires.

## IX.

### DIVISION OF COMMUNITY AND SEPARATE PROPERTY

The Parties acknowledge that some of the above property is either separate property or has components of separate and community property as indicated. The above distribution takes those considerations into account.

## X.

### ATTORNEY'S FEES AND COSTS

Each party shall be responsible for his and her own attorney's fees and costs incurred in this action, other than amounts already awarded by the Court and paid.

## XI.

### EXECUTION OF DOCUMENTS OF TRANSFER

Husband and Wife agree to execute any and all instruments that may be required in order to effectuate transfer of any and all interest which either may have in and to the said property of the other as hereinbefore specified and to do any other acts or sign any other documents reasonably necessary or proper for the consummation, effectuation or implementation of this Agreement and its intent and purposes. Should either party fail to execute any of said documents to transfer interest to the other, then it is agreed that this Agreement shall constitute a full transfer of the interest of one to the other as herein provided.

## XII.

### MUTUAL RELEASE OF OBLIGATIONS AND LIABILITIES

Except as herein specified, each party hereto is hereby released and absolved from any and all obligations and liabilities for the future acts and duties of the other, and, except as herein specified, each of the Parties hereby releases the other from any and all liabilities, debts or obligations of every kind or character incurred up to this date.

## XIII.

### FUTURE ACQUISITIONS TO BE SEPARATE PROPERTY

Any and all property acquired or income received by either of the Parties hereto from and after July 14, 2006 shall be the sole and separate property of the one so acquiring the same, and each of the Parties hereto respectively grants to the other all such future acquisitions of property as the sole and separate property of the one so acquiring the same.

## XIV.

## WAIVER OF INHERITANCE RIGHTS

Except as may be provided for herein, and except as may be provided by will or codicil voluntarily executed after this date, each of the Parties hereto hereby releases and waives any and all right to the estate of the other left at his or her death, and forever quitclaims any and all right to share in the estate of the other, by the laws of succession or community, and said Parties hereby release one to the other all right to be administrator or administratrix, or executor or executrix, of the estate of the other, and each of the said Parties hereby waives any and all right to the estate or any interest in the estate of the other for family allowance or property exempt from execution, or by way of inheritance, and said waiver shall be effective from the date of this Agreement.

## XV.

## PENNSYLVANIA PROCEEDINGS

The Parties agree that Case Number 67410443 of the Court of Common Pleas, Berks County, Pennsylvania shall be dismissed, and any related Orders shall be released as moot. The Parties shall cooperate in having that proceeding dismissed and Wife shall sign any financing or other documents required by Husband to confirm that the Support Order is no longer valid.

## XVI.

## INDEMNIFICATION

Each of the Parties hereto covenants and agrees not to contract any debts, charges or liabilities whatsoever for which the other's property or estate shall or may become liable or answerable, and agrees to hold the other party harmless and indemnified therefrom.

Page 11 of 16

## XVII.

## WAIVER OF ALL OTHER CLAIMS

Except as herein provided, each of the Parties does hereby waive any claims that either may have for alimony or support, and each of the Parties does hereby waive any claims that either may have for attorney's fees or court costs in connection with negotiations for the preparation of this Settlement Agreement, and on account of any actions that have been or may be instituted by either of the Parties for a divorce, except to enforce the terms of this Agreement or any Court order or decree based upon said Agreement.

Husband and Wife further agree that after the effective date of this Agreement, neither party shall have or owe any obligation toward the other party, except for those obligations, rights, responsibilities and duties set forth in this Agreement.

## XVIII.

## AGREEMENT FULLY UNDERSTOOD BY EACH PARTY

This Agreement is made and entered into freely and voluntarily by each of the Parties, who are free from any duress, constraint or influence of any kind or nature on the part of the other, and who act absolutely upon the independent judgment of each, and each party acknowledges that he or she has been advised by his or her attorney regarding the terms, conditions, rights and obligations created by this Agreement.

## IXX.

## AGREEMENT NOT TO BE RECORDED

Husband and Wife agree that this Agreement shall not be recorded in any state at any time.

## XX.

## ENTIRE AGREEMENT

All prior or contemporaneous understandings or agreements between the Parties as they relate to this litigation are merged into this Agreement, and this Agreement alone expresses the agreement of the Parties. This Agreement may be modified only in writing, signed by all Parties hereto, and no term or provision may be waived except by such writing. There are no other agreements or representations, express or implied, either oral or in writing, between the Parties concerning the subject matter of this Agreement, except as specifically set forth in this Agreement. The Parties have been represented by counsel in connection with the preparation of this settlement Agreement. Time is of the essence as to all aspects of this Agreement.

## XXI.

## APPLICABLE LAW

This Agreement was drafted through the joint efforts of the Parties through counsel, and shall not be read for or against any party to this Agreement on that account. This Agreement is intended to be enforced according to its written terms under the laws of the State of Nevada. There are no promises, or agreements or expectations of the Parties unless otherwise stated in this Agreement.

## XXII.

## COUNTERPARTS

This Agreement may be executed in any number of counterparts and each counterpart executed by any of the undersigned together with all other counterparts so executed shall constitute a single instrument and agreement of the undersigned. Facsimile copies hereof and facsimile signatures hereon shall have the same force and effect as originals.

Page 13 of 16

_____ DS _____

C:\Documents and Settings\Ash\My Documents\MaritalSettlementAgreement final.doc

## XXIII.

## NOTICES

All notices or demands of any kind that any Party is required to or desires to give in connection with this Settlement Agreement shall be in writing and shall be deemed to be delivered by facsimile and be depositing the notice or demand in the United States mail, postage prepaid, and addressed to the other Parties.

## XXIV.

## ATTORNEY'S FEES ARISING FROM AGREEMENT

In the event of any legal action, other proceeding, any efforts necessary to collect the sums mentioned herein (more than thirty (30) days past due); or to enforce the terms of this Agreement, by any of the Parties hereto; or to recover damages or equitable relief for a breach or threatened breach thereof; the prevailing party shall recover its costs, expert witness fees, consulting fees, and reasonable attorneys' fees incurred in such action or proceeding, which amount shall be determined buy the Court and not a jury.

## XXV.

## CONFIDENTIALITY

The terms of this Agreement are confidential and are not to be disclosed to anyone outside of the immediate parties, Husband and Wife. The Court, in entering the Decree of Divorce, also should seal the record with respect to this Agreement.

## XXVI.

## AGREEMENT SHALL NOT MERGE INTO DECREE OF DIVORCE

The Parties hereto agree that this Agreement may be submitted to the Court for approval, introduced into evidence, and approved, but that this Agreement shall not merge into the Decree of

Page 14 of 16

Divorce, and shall not be made a public record. If filed, this Agreement shall be sealed. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their personal representatives, heirs, successors or assigns.

IN WITNESS WHEREOF, the Parties hereto have executed this Marital Settlement Agreement on the day and year indicated below:

Dated this ____ day of August, 2006.

_____
Ashok Sudhakar

Dated this 23 day of August, 2006.

_____
Dixie Lynn Sudhakar

Approved as to form and content:

HANEY WOLOSON & MULLINS

_____
Thomas W. Davis, II, Esq.
Nevada Bar No. 2531
Aryn M. Fitzwater, Esq.
Nevada Bar No. 8802
1117 S. Rancho
Las Vegas, NV 89102

Approved as to form and content:

BOURKE & NOLD

_____
Joseph T. Nold, Esq.
Nevada Bar No. 8210
521 S. Sixth Street
Las Vegas, NV 89101

STATE OF ~~NEVADA~~  California )
                                                )ss
COUNTY OF ~~CLARK~~ San Bernardino )

On the 14 day of August, 2006, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Ashok Sudhakar, known to me to be the person whose name is subscribed to the foregoing MARITAL SETTLEMENT AGREEMENT and acknowledged to me that he executed the same freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

BETTY LOU BOGLE
Commission # 1495336
Notary Public - California
San Bernardino County
My Comm. Expires Jun 18, 2008

_____
NOTARY PUBLIC

STATE OF Pennsylvania )
                       )ss
COUNTY OF Lancaster  )

On the 21 day of August, 2006, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Dixie Lynn Sudhakar, known to me to be the person whose name is subscribed to the foregoing MARITAL SETTLEMENT AGREEMENT and acknowledged to me that she executed the same freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAYELA L. CHARLES, Notary Public
City of Lancaster, Lancaster County
My Commission Expires Dec. 28, 2009

_____
NOTARY PUBLIC

Page 16 of 16

                                                        AD     DS

C:\Documents and Settings\Ash\My Documents\MaritalSettlementAgreement.final.doc

# EXHIBIT 1

BCR Investments, Inc; Carper Inc in California; Donovan B Construction Inc; DCR Investments (Dennis Rieger); INTL Pavement Solutions Inc; International Pavement; IPS Services Inc; JGD Development Inc; RR Investment Group; ERA Investment Group; Sudhakar Associates; Sudhakar IDM; Academy of Professional Training, LTD.; Adelphi Group, Inc.; Barton; Bellair Palms (and all variations); California Road & Highways; Interests in Cone Engineering Contractors, Inc.; BAM (B.A.M.) Inc (for all states); BAM International, Inc. (Nevada); Interests and ownership in Diamond Village Investors 11, LLC's, (and similar names); BAM Holding LLC; BAM Management; BAM Partnership; BAM International doing business in California as Carper, Inc.; BHAA Transitional Corporation; Del Ray LLC; Environmental Law, may also be shown as Law Environmental Inc.; Environmental Law Group PC, and similar named variations; Environmental Research, Inc.; Environmental Research Inc. International; Environmental Management & Design Group (may be subsidiary of Environmental Research, Inc when operating in California, but is out of Sudhakar Penn address); Environmental Research, Inc. International; Environmental Management; Miramar LP; Flying Hills; ODAGEN; OPDAGEN; T/A OPDAGEN; Performance Technology group; PPTS Co.; Greenwood Development Services of Florida Inc.; FRX, Inc.; Inland Empire Center, Inc.; International Pavement Solutions; J W Investments; Miramar Limited Partnership; NASUS Holdings LLC; Orix Credit Alliance, Inc.; SCI UXO/OE; SCI UXO/OE Services; SCI UXO/OE Services, UXO/OE; SEI Group, Inc.; Sepcon International; DBA:SCIUXO/OE; PAP Ventures LLC; Rowe Entertainment.

This Exhibit 1 is subject to and does not include those companies awarded to Ashok Sudhakar pursuant to the Marital Settlement Agreement, section V (B) (3).